Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is our final day of oral argument for this panel this week. We have four appeals to hear this morning. Council, we're familiar with your cases. We've read your briefs. The we've looked at at least portions of the record. You have limited time. Get straight to the heart of your argument when it's your time. Be mindful of the clock. When the clock expires, please stop. If you're answering a question from the court, of course, feel free to finish your answer. If you have rebuttal time, you won't lose that by answering the question, but do be mindful of our clock. Judge Lugo and I are very pleased to have our colleague from the Middle District of Florida, Judge Schlesinger, assisting us this week. He's done that before and he volunteered to do it only recently, and so we really appreciate his help this week. We'll start with Leak versus Drinkard. Mr. King. Thank you, your honor. May it please the court, I'm Kyle King here with co-counsel Walker Chandler on behalf of the appellants. The central issue before the court in this case is whether the city of Alpharetta's attempt to limit the message conveyed by parade participants in the old parade is an example of government speech or is, as we contend, an example of government oppression of free speech. Well, it's their parade, isn't it? No, your honor, it's not. The city of Alpharetta was a co-host of the parade along with the appellants. Who paid most of the cost? Well, the city provided the police protection, provided the use of the city streets. However, they've made it clear to the American Legion that if the American Legion refuses to go forward with the parade without the city's support, that the city will still continue to provide the same public service protection that has to be there. The law enforcement obligations of the city are unchanged. What the city has attempted to rely upon is selections from the page three is evidence that it was the city's parade. They point to the supposed identification of the parade marshal as the city of Alpharetta, but as shown on page 84 of the appellant's appendix, it was in fact the American Legion that extended the invitation. To the extent that there were costs to this parade, weren't they overwhelmingly borne by the city? I don't know that that is entirely reflected in the record, but again, your honor, what's the best what what evidence is there in the record, Mr. King? Well, I don't believe there's much evidence in the record about costs specifically at all. What is there though? Again, the parade application that they are relying upon. Yeah, I don't know that you answered my question. I do not believe that there is evidence in the record that reflects who bore the costs, but what is in the record again is that the the application that the city is relying upon indicates that the theme of the parade was the American Legion, a century of service. So when you apply to participate in the parade, how do you apply? You go to the city's website? Your honor, there's a written application that is submitted to the American Legion. The American Legion address is given prior to place atop the margin of that application, followed by the insignia of the American Legion, the American Legion Auxiliary. May I ask you a question? My understanding from the record is that it's the city, and this is I think from testimony, that the city decides who and what entities will be permitted to participate in the parade. If the city decides that a person or entity cannot participate in the parade, that person or entity does not participate. That is not what the record reflects. That is what the city is contending, but what the record reflects in fact is that the city contacted the American Legion, told them what they thought should be the standard, and simply stated that they would decline to participate in the American Legion's private parade in the event they did not. May I ask you a question that goes back to Chief Judge Pryor's questions regarding costs and financing? My understanding is that you didn't introduce any evidence to the contrary as to the financing and cost of the parade. Am I correct on that? You are, your honor, in part because the before determining that there were no disputes of material fact. Well, that doesn't need to be an evidentiary hearing. That's not the way summary judgment works. Can you do affidavits? I mean, isn't that normally how it works? Well, it is normally how it works, but it also, under Federal Rule 56A, they're not only considering the pleadings and affidavits, but also the discovery materials that again- Right, and you could have deposed someone that introduced evidence to the contrary, regarding financing and cost, but you did not. What we introduced were documents that demonstrated that in fact the city was not the primary sponsor of the parade. Again, the city is- What's your best evidence that the city wasn't the sponsor of the parade? Because when I look at this, you have an application that has the city's logo and the American Legion's logo on it. The application is obtained by going to the city's website. You submit it to, as you point out, the American Legion, but is in care of the city at the city's address. The mayor and the council are the ones who decide whether to approve your participation or not. I mean, this looks like it is totally controlled and funded by the city. Well, if that's the case, your honor, then there's an open question as to why the record reflects that the city in fact contacted the American Legion and stated that if the American Legion decided to allow the Sons of Confederate Veterans to participate, that they would no longer partner with the American Legion as a co-sponsor. They were not dictating- Okay, so what? Well, it makes it clear that the final decision, what you said before, is simply mistaken. Well, it wouldn't be the city's parade anymore. Well, it wasn't the city's parade then. They were stating the terms under which they- What you just described to me suggests the opposite. What happened when they told the Legion that? The Legion responded that they were concerned that this was an infringement of the First Amendment, which is exactly the sentiment that was expressed in the emails from the assistant city administrator when indicating that they, although they were trying to discourage- They had the parade, didn't they? The American Legion did have the parade. And the Sons did not participate. They were not permitted to participate because we did not- Because they insisted on using the battle flag. Because the court below did not grant an injunction to prevent their exclusion. Yeah, well, had they not used the battle flag, they would have been allowed to participate, wouldn't they? Well, that's open to debate. According to the evidence in the record, there are some times when they are refusing to allow their participation at all. There are some times when they're refusing to allow- I thought James Drinkard sent a letter to your client that said, look, you can participate, but not if you're going to use the battle flag. They did say that. And then they wrote to the American Legion and indicated that if the event involved the Sons of Confederate Veterans, that's on page 81 of the appellant's appendix, that they would no longer partner with the American Legion as a co-sponsor if it involved the group at all. Again, they subsequently wrote and raised the issue of supposed disorder or violence for the first time. That's at page 20 of the record. So the city has used whatever excuse it wanted to use in the moment. Here's the deal. Mr. King, if your clients want to have a parade, let's say they wanted to have a parade on Confederate Memorial Day, they can apply for a parade permit and have their own parade. But governments can hold parades too. Governments have been holding parades since the Roman Empire, and particularly military-related parades. And they can communicate whatever message they want to communicate because it's their parade. And if they want to partner with a private organization like the American Legion, they can do so. But that's their decision. It's their speech. But this wasn't their parade, and it does make a difference because under Hurley v. Irish American Gay, Lesbian, and Bisexual Group of Boston- That's a private organization doing its own parade and applying for a parade permit, and then a government trying to tell the private organization who it has to admit. Look, if the Sons wanted to have a parade, for example, on Confederate Memorial Day, the city wouldn't be allowed to tell you that you have to include an organist, a float for the Sons of the Union veterans. But we're talking about two different things. You can have a privately-sponsored parade and a government-sponsored parade. Respectfully, Your Honor, we aren't talking about two different things. The American Legion was continuing a 70-year tradition of the Old Soldier's Day Parade, which was begun initially for the purpose of honoring Confederate veterans in the first instance. They've always been participants in the parade. They've always carried the Confederate battle flag. And this has been a private event in which the city acted as a co-sponsor. Again, the record evidence indicates that, at a minimum, there is a genuine dispute, the material fact, as to whether this was a government-sponsored parade or a private-sponsored parade. What facts are in dispute? The fact that James Drinkard contacted the American Legion and indicated the terms under which it would continue to serve as a co-sponsor, and that included dictating- That's the end dispute? Well, I mean, I'm not understanding what it is that we would need a hearing about. It may be all the facts are known, and the inference you draw from that fact is contested. But the facts themselves, the underlying facts, it seemed to me, ought to be undisputed. Well, Your Honor, the point is the inferences from those facts make it very clear, relying just on their own, the city's own evidence, that they have taken a series of inconsistent positions on this matter, that they recognized that it was suppressing free speech in order to dictate to the American Legion what the- Is there any evidence that a private organization contributed any significant funds for this parade? There's no evidence about the funds at all. Okay, but you admit that the city bore substantial costs for the parade. Well, I'm sure that they did, as they do for all public- You admit that? On public streets. Okay. I think, let's hear from Mr. Stacey. Mr. King, you've saved four minutes. Thank you, Your Honor. Your Honors, may it please the court. History, endorsement, control. These are the three factors that this court considers when deciding if the government is speaking for itself. When the government speaks for itself, it can freely select the views it wants to express, including speaking through the removal of speech, which it does not endorse. And where government speech occurs, that speech is not regulated by the Free Speech Clause of the First Amendment. Tell me what the record says about costs. Your Honor, the city did, in fact, bear the primary financial responsibility for the cost of this parade. I thought that was true, but tell me what the record says about it. The record says that the city provided the general planning, it provided the barricades, it provided the police force, it provided the event space and blocked off the streets. The city's financial commitment was so significant, in fact, that as reflected by the record and subsequent communications with the American Legion, the American Legion was concerned that it would not be able to put on its own private parade in the absence of city participation, which is true. Well, let me ask you a question, Mr. Stacey. Is there anything in the record that shows that if the American Legion held the parade on its own without the city's assistance, would they be responsible for paying the cost to the city? Yes, if any private participant wants to put on a parade and they're perfectly entitled by right to do so, they have to pay all costs associated with that, including hiring the police for the day, off-duty police to run traffic and man the barricades, they have to pay for the barricades themselves. Is that in the record? Yes, that is reflected in the affidavit of James Drinkard, and it is reflected also in the communications with the American Legion that were subsequent to the city pulling out of the parade with a resolution saying it would no longer be a participant in the parade beginning in 2020. Your Honors, again, history endorsement control. From the applications to the advertisements to the parade day barricades and police traffic control, Alpharetta's identity and sponsorship was emblazoned on all aspects of the parade and closely identified with it. Alpharetta was the primary financial sponsor of the parade. Alpharetta decided who could participate and who could not, so as to effectively control and communicate that message. Now, it's true that Alpharetta conditioned the appellant's participation in the parade on their not displaying the Confederate battle flag on a pole. The battle flag is a direct and poignant symbol of insurrection against the United States of America, and flying it on a pole is an act of significance, a message that was inconsistent with that which Alpharetta sought to convey in the parade. Because the parade was Alpharetta's government speech, Alpharetta was entitled to condition appellant's participation in the parade on their not displaying the battle flag. History, whether the speech in question has traditionally communicated messages on behalf of the government. The parade has long communicated a message on behalf of Alpharetta, one of appreciation and goodwill to American veterans and the defense of the right and freedoms of all Americans. And as this court just observed, parades from time immemorial since the Romans have been used by governments to communicate messages. Parades are a form of expression in which the participants convey a message to the public through the inherent expressiveness of marching. Alpharetta's parade was no different. The parade was originally established as the appellants have identified to honor civil war veterans, but was shortly discontinued thereafter. It was revived in the early 1950s to honor all American war veterans. And Alpharetta held that parade annually in most years until 2020. Does the participation of the Legion change this from government speech to private speech? What does Supreme Court precedent tell us about that? The inclusion of private speakers does not in and of itself transform government speech into private speech. Again, the court looks back to the three factors, history, control, and endorsement. And here- We look at the Texas case, the Walker case. The Supreme Court said the fact that private parties, we're talking about those license plates that private organizations have asked to allow people to buy. The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message, right? That's absolutely correct, Your Honor. And again, you would look at it in the context of the factors. If the factors have been met to demonstrate the requisite control, endorsement, and history of the message, then the fact that private actors are involved, such as the American Legion, is not dispositive on the issue of government speech. It can remain government speech. And one point to Your Honor's question in Appellant's presentation, there were letters back and forth with the American Legion. There's no question, it's in the record. Those letters were communicating to the American Legion what Alpharetta's position was on the display of the Confederate battle flag. It was an informational message to say, look, we're not gonna do this. If you wanna have a private parade because you're so insistent upon doing this, go ahead. That didn't happen. Yeah, the American Legion went forward with the parade as the city's partner, right? It did, including in 2018, in which the Sons of Confederate Veterans did not participate under the same conditions as resulted in litigation in 2019. But what's notable about 2018, Your Honors, is that in fact, the Sons exercised their right to line the sidewalks and display the Confederate battle flag on the sidewalks, which the city did not stop and agrees that it cannot stop. That is their- That's their free speech, right? Absolutely, Your Honor. Now, you've mentioned history about five times. Wasn't the history showing that they did allow the battle flag in past parades? Yes, Your Honor. Certainly, the battle flag had been allowed in past parades beginning in 2018, which is a year prior to the events of this case. It was not allowed. And again, the Sons did not participate when that restriction was placed upon them, but instead lined the sidewalks. But the notion of history is not limited to we can only do today what we did in the past. Government is not a static thing. It is certainly something that can evolve and change over time.  is this a medium by which the government has traditionally communicated a message? The answer here is unquestionably yes. The message may have evolved over time, and now the message is not one reflecting local attitudes and local control that is inclusive of the Confederate battle flag. And again, the only thing that was restricted here was the Confederate battle flag. They were the Sons of Confederate Veterans were still allowed to march. They were still allowed to wear their regalia. They were still allowed to have patches and pins. And that's consistent with the city's message, which is we're honoring the people. They could have the Bonnie Blue or the Stars and Bars. They just couldn't have the battle flag. Correct, Your Honor, because the battle flag itself is very specific. It is the flag carried into battle in insurrection against the government. The city was honoring the people. It wasn't honoring the act. Well, it's also has taken on some contemporary meaning that the city thought was divisive, I think. Certainly, Your Honor, that's absolutely correct. And that contemporary meaning can still inform part of the message as to why the city doesn't think that the battle flag should be included. The message can be multifaceted. It can have multiple components. But again, the overall message here is simply one of celebrate American veterans, celebrate the men and women, don't celebrate the act of insurrection, which is why the Confederate veterans were allowed to participate other than flying the battle flag on a pole. And the act of flying a flag on a pole signifies something very special in history. It's an act of dominion and act of claim over the territory on which it flies. So that is the reason here why that was restricted. We've spoken about history, again, endorsement. The Alpharetta was the primary financial sponsor. It provided the event space, the safety barricades, the vendors to service the parade. We have an affidavit to that effect. We had no competing evidence to suggest that there was any other significant financial cost borne by anyone, right? Correct, Your Honor. The American Legion's financial participation was minimal. Certainly they were a value partner, but in terms of actually putting on the parade, the city was the entity that had to front the cost. And that parade occurred on Alpharetta's city streets. The police vehicles that lined the route bore Alpharetta's name. And while the parade referenced the Legion, and it did reference the Legion on the application, there's no question about that. It included, as you pointed out, the city logo, identified the parade marshal as the City of Alpharetta Special Events Department. And even that, I mean, the city's choosing who it wants to partner with. Absolutely. The city was the final arbiter about who got to be in the parade, which- And the city said, we don't want the sons of the Confederate veterans to even have a float or participate and wear those uniforms. It could have done so, couldn't it? It could have done that, but the city chose not to go so far, again, because the message is nuanced. It's not the total exclusion, and we could probably argue for days- I know, but I'm just, I mean, just as a matter of law, they weren't obliged to even allow them to participate, were they? That's correct, Your Honor. When the government speaks, and it is government speech, the government is not constrained by the Free Speech Clause of the First Amendment and can exclude messages, it can endorse programs, it can take a position. So they would have been entirely within their rights to do so. We've spoken about the fact that private speakers do not destroy government speech. The inclusion of private speakers in the message, when the message and the factors weigh in favor of government speech, does not take it outside the realm of government speech or suggest that the city was a mere forum provider. And that's just simply been the law for a long period of time. The speech does not need to cohere, necessarily, in all respects. Appellants argue that by allowing the parade participants with potentially differing viewpoints, Alpharetta could not have been engaging in government speech because it would be engaging in contradictory views. And in support of this, the appellants cite Mattal v. Tam for the overly broad proposition that any alleged incongruity in the government's message renders it incapable of being government speech. This simply isn't the case. It misunderstands the nature of Alpharetta's speech and it misunderstands Mattal. Mattal actually supports the courts, the Alpharetta's position in this case, excuse me, as it emphasizes the selective receptivity that is the hallmark of the government speech doctrine. Mattal involved the government's acceptance or rejection of registered trademarks, acceptance or rejection that is tightly controlled. And the USPTO lacked any discretion to reject or cancel marks outside of the statutorily mandated requirements. The court rejected the argument that trademark registrations are government speech because essentially the USPTO was required to take all comers. In effect, the USPTO had no articulable message because it lacked control to define that message. Absent a message, government speech doesn't exist. But here Alpharetta was not subject to strict constraints in its selection of its messages. Alpharetta picked and chose who participated in the parade and who did not consistent with the message it wanted to express. So it had an articulable message that unlike the USPTO, Alpharetta is not simply affixing a government seal of approval to the parade by means of a ministerial government act. Alpharetta's message is embodied in the overall composition of the parade and Alpharetta controls that message. Your honors, appellants clearly disagree with the speech that Alpharetta chose to communicate. But the existence of the government speech doctrine does not depend on every single citizen agreeing with the substance of the government's message. As the court in Walker versus Texas Division Sons of Confederate Veterans explained, if the government could only speak on issues with which every single citizen agreed, the government, as we know, it would be radically transformed. It would be hamstrung. The hallmark of the government speech doctrine is that it reflects local control, local decisions, local values. A local community elects its leaders and those leaders reflect the values of that community in the speech the government chooses to make. If the community doesn't like the message the government chooses to espouse, a mechanism exists to address any such disagreement and provide governmental accountability, the ballot box. Government speech is regulated by the political process by local control. Newly elected officials can later espouse some different or contrary position, which is exactly what we've seen here with the parade evolving over time to not include the Confederate battle flag. And this makes logical sense, your honors. If a citizen could dictate the content of government speech simply by objecting that their own speech was not included, the government speech doctrine would be effectively neutered and lose all meaning. And dictating the content of Alpharetta's speech is exactly what's occurring here. Alpharetta has not, excuse me, appellants have not been denied the opportunity to hold their own parade celebrating all things Confederacy. And Alpharetta agrees that appellants would be entirely within their rights to do that. Appellants have not been denied the right to line sidewalks inside the parade displaying the battle flag, which is a right, as already stated, they've actually exercised. Alpharetta is simply saying when Alpharetta is the speaker, the parade sponsor, appellants cannot force a message inconsistent with Alpharetta's government speech into that parade. Finally, your honor, I will just point out that while the district court didn't find the need to take up this issue on the summary judgment, appellants injunctive claims are moot. The city has passed a resolution declaring that it will no longer participate in the old Soldier's Day parade and no longer be a financial sponsor. It certainly can participate or excuse me, can go forward with additional sponsors, such as the American Legion, if they were to so choose as a private parade, but it will no longer be Alpharetta's parade. That's unfortunate. Thank you, your honor. Thank you, Mr. Stacey. Mr. King, tell me something. Let's say after the ratification of the Bill of Rights, after the ratification of the First Amendment, the federal government decided to hold a parade in the District of Columbia celebrating our victory over Great Britain. Would they be obliged to include a group of loyalists waving the Union Jack to participate in the parade? No, not if the federal government was doing it. But from page 76 of our appendix, it's clear that that isn't what happened here. James Drinker, the Assistant City Administrator, conceded that the parade, quote, is largely viewed as the Legion's event, unquote, which flies in the face of the conclusion reached by the district court that the public would likely identify the city as the parade speaker. It plainly takes it out from under the decision in MEC that a medium that has long communicated government messages is more likely to be government speech. So no, your honor, we don't we don't concede that that is. Do you admit that Mr. Drinker's affidavit also recounted all the costs that were borne by the city? I don't deny that, your honor. Again, there's no evidence to the contrary, is there? There's not, your honor. And there's no evidence of any significant costs being borne by any other private organization. No, your honor. And there's no dispute that the application for the to participate in the parade was obtained by going to the city's website. It may have been available there. We dispute that it was going to the city. Well, it was mailed to the American Legion in care of the city at the city's address, right? Yes, in care of the city. And the application had the seal of the city and of the American Legion at the top of the application, right? It had the seal of the city at the bottom of the application, below three different seals of the American Legion. OK, all right. And so the city seal was there. The mayor and the council decided who who would participate after reviewing the application, right? No, your honor. The issue of the government, the question, the third question that has to be asked under Sumo and Walker, did the government maintain direct control, direct control of the composition of the message? Absolutely not. Page 82 of Appellant's Appendix, Mr. Drink. I thought you admitted earlier when you when you first argued that the city said they weren't going to participate. They weren't going to help sponsor this parade. If the the sons carried the battle flag, that is correct. But they what they said was, it sounds like control to me. If American Legion Post 201 chooses to move forward with the Old Soldiers Day parade, inclusive of these organizations or symbols, the city cannot be a partner in the event. This is not to say that the event could not occur, only that the city will not be a sponsor or provide no cost services to support the event as we have traditionally done. Regardless of the decision made by the post with respect to the event and the path forward, the city of Alpharetta will remain a friend to your organization and will respect the decision made. We look forward to hearing the decision of the American Legion. OK, and what was their decision issue? What was their decision? We didn't get to that point. You didn't present any evidence about that in opposition to the motion for summary judgment. Your Honor, we presented those documents that show that the city took the position. Argument was that those documents aren't helping your argument. Well, Your Honor, we disagree upon that. The government speech doctrine, according to Mattel, is that a doctrine is susceptible of dangerous misuse. The courts must exercise great caution before extending the government speech precedent. If private speech can be passed off as government speech simply by affixing a government seal of approval, government could silence or muffle the expression of disfavored viewpoints. That is precisely what is happening here. This is to aid our recent opinion and being. Your Honor, I've also read the the previous cases decided under Texas v. Johnson, under Cohen versus California, under Collins versus Smith. Those are private parades and private acts of burning a flag. Is this your honor? It is. Where's your evidence for that? It is in the record that I've been trying. Your best evidence is that the city told the American Legion we won't help sponsor this or participate if these groups are going to be included. That's your best evidence. Your Honor, that is all of which all of which suggests that the city was exercising  this message and not to fund this message, which is entirely it's right. I'm out of time, Your Honor. No, no, you can answer my question. Your Honor, we simply have a disagreement as to what these documents show. Well, what's your best? You're saying that is your best evidence. Your Honor, again, it's the totality of it. I don't think there's one document that I point to and say this is our best evidence. It's the inconsistency. It's the attempt to manipulate a private entity to exclude speech at which it disapproved. But that doesn't get government speech. Thank you. OK, thank you, Mr. King. We'll go to our second case.